J-S50032-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TYRE GAMBLE, | : | |
| | : | |
| Appellant | : | No. 2944 EDA 2019 |

Appeal from the PCRA Order Entered September 18, 2019
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0600981-2004

BEFORE:    BENDER, P.J.E., SHOGAN, J. and STRASSBURGER, J.*

MEMORANDUM BY SHOGAN, J.                    **FILED JUNE 8, 2021**

Appellant, Tyre Gamble, appeals from the September 18, 2019 order dismissing, without a hearing, his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546.  After review, we affirm.

Following a several-day jury trial beginning on November 14, 2005, the jury convicted Appellant on November 21, 2005, of first-degree murder, intimidation of a witness, and possessing instruments of crime ("PIC").[1]  A prior panel of this Court summarized the relevant facts as follows:

> [Appellant's] conviction arises out of an April 2004 shooting incident in [W]est Philadelphia following a verbal exchange with victim Taj Chavis.  While [walking with Rasan Davis] and holding an automatic handgun behind his back, [Appellant] approached Chavis at the corner of 33rd and Wallace

---

[1] 18 Pa.C.S. §§ 2502(a), 4952, and 907, respectively.

* Retired Senior Judge assigned to the Superior Court.

Streets[,] and the two began to quarrel. Following Chavis's challenge, ("You [*sic*] acting like you [*sic*] gonna do something"), [Appellant] pulled the gun from behind his back and shot Chavis in the chest. As Chavis lay bleeding on the sidewalk, [Appellant] fired a second shot into [Chavis's] head and then fled the scene. [Appellant] was then nineteen years old and [Chavis was] somewhat younger.

Prior to the shooting, as [Appellant] and [Chavis] exchanged words, ten[-]year[-]old G.B. ventured up the street with his brother and cousin as the three walked home from school. Upon seeing them, [Appellant] directed the boys to the other side of the street, where they witnessed the subsequent killing. Distraught, G.B. ran several doors down the street to the home of his grandmother, Barbara Williams, and upon entering, told his mother, Zakia Williams, "Mom, I seen the whole thing. I seen the whole thing." After calming her son, Zakia Williams left the house and went to the scene of the crime, where Philadelphia Police officers had by then converged. As she walked past, she threw a folded piece of paper to the ground before Officer Margarita Wilcox. Written on the paper was a note stating[,] "Everything you need to know is on this piece of paper," and "Tarie (shooter)." Officer Wilcox then gave the note to the investigating detective, who attached it to his report.

Police did not immediately apprehend [Appellant,] and he remained at large in the surrounding area during the investigation. In the intervening time, word circulated in the neighborhood that [Appellant] had killed … Chavis, prompting [Appellant] to telephone the home of Barbara Williams in search of her daughter Zakia Williams, the mother of G.B. Although [Appellant] did not identify himself, his name and number appeared on Barbara's caller ID unit[,] and Barbara recognized the caller's voice. When [Appellant] asked for Zakia, Barbara told him that Zakia did not live there, to which [Appellant] asked[,] "Well, why does she keep pointing me out?" [Appellant] then clarified that he meant[,] "Telling people that I killed that boy." After Barbara told him, "the whole neighborhood is saying that you killed him," [Appellant] concluded the conversation with a warning, saying[,] "Tell Zakia to stop putting my name in. Tell her to stop putting my name in her mouth or she [*sic*] going to get f---d up."

Following [Appellant's] apprehension, the Commonwealth charged him with the homicide and PIC offenses at issue as well as several firearms offenses, which the trial court ultimately *nol*[] *prossed*. The Commonwealth added the further charge of witness intimidation in view of [Appellant's] "warning" to Barbara Williams concerning her daughter's discussion of the killing. Thereafter, in November 2005, [Appellant's] case proceeded to a jury trial before the Honorable Renee Cardwell Hughes. During the presentation of its case in chief, the Commonwealth presented[, *inter alia*,] the testimony of the victim's father, Alvin Chavis, to establish a "life in being," as well as the testimony of [Rasan Davis, who identified Appellant as the shooter,] Zakia Williams and G.B. concerning G.B.'s account of the shooting, and Barbara Williams concerning [Appellant's] remarks threatening her daughter. The Commonwealth also presented the testimony of Ronald Saunders, who identified himself as [Appellant's] friend. Although Saunders had given a statement to the police implicating [Appellant], he professed at trial not to remember the contents of that statement, prompting the prosecutor to read from the statement in an attempt to refresh the witness's recollection. Finally, the Commonwealth presented the testimony of Mercedes Bradshaw, a [sixteen-year-old] resident of the neighborhood who saw [Appellant] fire the second shot as the victim lay on the ground.

[Appellant] elected not to testify and presented no other evidence, following which the jury returned a verdict of guilty.… [T]he court sentenced [Appellant] to concurrent prison terms of three and one[-]half to seven years[] for witness intimidation and two and one half to five years[] for PIC to be served consecutive to life imprisonment for first-degree murder.

*Commonwealth v. Gamble*, 947 A.2d 824, 281 EDA 2006 (Pa. Super. filed January 22, 2008) (unpublished memorandum at *2–4). This Court affirmed Appellant's judgment of sentence, and our Supreme Court declined further review on September 30, 2008. *Id.* (unpublished memorandum at *2), *appeal denied*, 958 A.2d 1046, 78 EAL 2008 (Pa. filed September 30, 2008).

On February 11, 2009, Appellant *pro se* filed a timely PCRA petition ("2009 Petition").[2] The PCRA court appointed counsel, Attorney Marc Antony Arrigo, who subsequently filed a **Turner/Finley**[3] no-merit letter on June 18, 2010.[4] Therein, Attorney Arrigo summarized the claims Appellant wished to raise: (1) ineffective assistance of trial counsel for failing to file a direct appeal, causing Appellant to retain private appellate counsel who was unfamiliar with his trial, thus rendering appellate counsel ineffective; and (2) the Commonwealth's failure to inform Appellant of the specific degree of murder it was prosecuting, which prejudiced Appellant's defense, denied him a fair and impartial trial, and caused trial counsel to be ineffective and the

---

[2] The 2009 Petition, as well as other filings, were docketed but do not appear in the certified record. However, they are attached to subsequent filings, which are part of the record.

[3] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[4] Appellant filed *pro se* amended PCRA petitions in April 2010 and August 2012. Our Supreme Court has a "long-standing policy that precludes hybrid representation." **Commonwealth v. Jette**, 23 A.3d 1032, 1036 (Pa. 2011); *see also Commonwealth v. Pursell*, 724 A.2d 293, 302 (Pa. 1999) ("We will not require courts considering PCRA petitions to struggle through the *pro se* filings of defendants when qualified counsel represent those defendants."); **Commonwealth v. Williams**, 151 A.3d 621, 623 (Pa. Super. 2016) (citations omitted) (stating that "[i]n this Commonwealth, hybrid representation is not permitted" and our courts "will not accept a *pro se* motion while an appellant is represented by counsel; *pro se* motions have no legal effect and, therefore, are legal nullities"); **Commonwealth v. Willis**, 29 A.3d 393, 400 (Pa. Super. 2011) (holding the PCRA court erred when it accepted and considered the merits of Willis's *pro se* amended PCRA petition while Willis was represented by counsel). Accordingly, we do not consider Appellant's *pro se* petitions.

trial court to lack jurisdiction over his case. ***Turner/Finley*** Letter, 6/18/10, at 3−4.

On April 19, 2011, the PCRA court entered a notice of intent to dismiss the 2009 petition without a hearing pursuant to Pa.R.Crim.P. 907, followed by Attorney Arrigo's filing of a motion to withdraw as counsel. Appellant filed a *pro se* response on May 12, 2011. In July 2011, a signed but undated order appears in the certified record, dismissing the 2009 Petition and permitting Attorney Arrigo to withdraw ("July 2011 Order"). As discussed more fully *infra*, no appeal was taken from the July 2011 Order, presumably because it was not docketed, and there is no indication in the record that it was served upon the parties.

For reasons that are unclear, the PCRA court issued another Rule 907 notice years later on April 10, 2017.[5] Shortly thereafter, Appellant retained private PCRA counsel, Attorney Teri B. Himebaugh, who continues to represent Appellant in the instant appeal. Attorney Himebaugh entered her appearance, along with a motion for leave to file an amended PCRA petition on April 29, 2017. Although the PCRA court did not rule on the motion, Attorney Himebaugh filed an amended PCRA petition on behalf of Appellant on November 19, 2017 ("2017 Amended Petition"). Therein, Appellant claimed constitutional violations based on the lack of notes of testimony

_____

[5] We note that at least four different judges were assigned to oversee the PCRA proceedings in this case between 2009 and 2018, which explains some of the procedural irregularities.

- 5 -

from the trial and trial counsel's failure to object to the trial court's reasonable-doubt jury instruction. *See generally* 2017 Amended Petition, 11/19/17. Once Attorney Himebaugh requested and received transcripts, Appellant filed a second amended PCRA petition on February 19, 2019 ("2019 Second Amended Petition"). The 2019 Second Amended Petition raised three claims relating to the ineffectiveness of trial counsel for failing to object or to object properly at trial, which are at issue in the current appeal. 2019 Second Amended Petition, 2/19/19, at 5−24. The Commonwealth responded by filing a motion to dismiss on May 31, 2019, contending that Appellant's 2009 Petition and 2019 Second Amended Petition had no merit. The PCRA court issued a Rule 907 notice on August 20, 2019, to which Appellant did not respond. On September 18, 2019, the PCRA court dismissed Appellant's petition as meritless. This timely-filed appeal followed. Both Appellant and the PCRA court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Appellant raises the following issues:

I.   Did the PCRA Court err in finding that trial counsel was not ineffective when he failed to object to an unconstitutional reasonable doubt jury instruction, violating his Fourteenth Amendment due process rights?

II.  Did the PCRA Court err in finding that trial counsel was not ineffective for failing to assert the correct objection to portions of the prosecutor's closing argument?

III. Did the PCRA Court err when it found that trial counsel was not ineffective for failing to make a timely and proper

hearsay objection to Ronald Saunders' testimony thereby waiving the claim for trial court and appellate review?

Appellant's Brief at 3.

Before we proceed to the merits of Appellant's appeal, we must consider which PCRA petitions are properly before us because such determination impacts our jurisdiction. The claims at issue on appeal were raised in the 2019 Second Amended Petition. The PCRA court and the parties treated the 2009 Petition as still pending and assumed the 2019 Second Amended Petition amended the 2009 Petition. Despite their assumption, the certified record contains the July 2011 Order, which, as noted *supra*, purported to dismiss the 2009 Petition.

"Appellate jurisdiction cannot be conferred by mere agreement or silence of the parties where it is otherwise nonexistent. We may accordingly raise this issue *sua sponte*, even though neither of the parties have done so." **Commonwealth v. Borrero**, 692 A.2d 158, 159 (Pa. Super. 1997) (citations omitted). Thus, we must examine whether the 2009 Petition was dismissed by the July 2011 Order as well as whether Appellant's 2019 Second Amended Petition is an amended petition relating back to Appellant's 2009 Petition or a subsequent petition subject to the PCRA's one-year time limitation.

Neither this Court nor the PCRA court has jurisdiction to address the merits of an untimely-filed petition. **Commonwealth v. Leggett**, 16 A.3d 1144, 1145 (Pa. Super. 2011). Any PCRA petition, including second and

subsequent petitions, must either be filed within one year of the judgment of sentence becoming final or plead and prove a timeliness exception. 42 Pa.C.S. § 9545(b). "For purposes of [the PCRA], a judgment [of sentence] becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S. § 9545(b)(3).

Herein, Appellant's judgment of sentence became final on December 29, 2008, *i.e.*, ninety days after our Supreme Court denied his petition for allowance of appeal on September 30, 2008. **See** U.S. Sup. Ct. R. 13 (requiring petition for writ of certiorari to be filed within ninety days after entry of the order denying discretionary review by state court of last resort). Appellant then had one year, until December 29, 2009, to file a timely PCRA petition. 42 Pa.C.S. § 9545(b). Accordingly, Appellant's 2009 Petition filed on February 11, 2009, was timely.

The July 2011 Order purported to dismiss the 2009 Petition without a hearing. Notably, this case continued to proceed for another eight years with the PCRA court and parties apparently unaware of the July 2011 Order. Appellant's 2017 Amended Petition and 2019 Second Amended Petition were filed after Appellant's sentence had become final and his window in which to file a timely serial PCRA petition had expired. If the July 2011 Order dismissed Appellant's 2009 Petition, we would be constrained to conclude

that the PCRA court was mistaken in treating Appellant's subsequently filed documents as amendments to his timely filed PCRA petitions, as opposed to subsequent PCRA petitions. In that event, we would be required to find the PCRA court was without jurisdiction to consider the 2017 Amended Petition and 2019 Second Amended Petition because Appellant failed therein to plead and prove an exception to the timeliness requirement under the PCRA. **See** 42 Pa.C.S. § 9545(b)(1)(i−iii).

However, after review of the certified record, we conclude that the July 2011 Order did not, in fact, operate to dismiss the 2009 Petition. Our Rules of Criminal Procedure mandate that, when a PCRA petition:

> is dismissed without a hearing, the judge promptly shall issue an order to that effect and shall advise the defendant by certified mail, return receipt requested, of the right to appeal from the final order disposing of the petition and of the time limits within which the appeal must be filed. The order shall be filed and served as provided in [Pa.R.Crim.P.] 114.

Pa.R.Crim.P. 907(4).

Rule 114 requires that all orders and court notices be docketed and that the docket entries contain the date the clerk's office received the order, the date of the order, and the date in which the clerk served the order to the party's attorney or the party if unrepresented. Pa.R.Crim.P. 114(B), (C)(2). "The comment to [Rule 114] suggests that the notice and recording procedures are mandatory and not modifiable." **Commonwealth v. Davis**, 867 A.2d 585, 587 (Pa. Super. 2005). Thus, where the docket does not indicate when, or even if, an order was properly entered or served upon a

petitioner, its requirements are never triggered. ***Commonwealth v. Bush***, 197 A.3d 285, 288 (Pa. Super. 2018) (vacating order dismissing PCRA petition where Rule 907 notice of intent to dismiss was not entered on docket or served upon the petitioner as required by Pa.R.Crim. 114) (citing ***Commonwealth v. Jerman***, 762 A.2d 366, 368 (Pa. Super. 2000)) (holding time for filing notice of appeal never commenced because the docket did not indicate that the petitioner was provided with a copy of the final order).

Instantly, the July 2011 Order dismissing Appellant's 2009 Petition was not entered on the docket, and there is no indication in the record that it was served on the parties as mandated by Pa.R.Crim.P. 114. Thus, the requirements of Rule 114 never were triggered, and the July 2011 Order was a legal nullity, which did not dismiss the 2009 Petition. ***Accord Bush***, 197 A.3d at 288. Accordingly, the 2009 Petition remained pending at the time Appellant filed the 2019 Second Amended Petition ten years later. Therefore, we now turn our attention to whether the 2019 Second Amended Petition did, indeed, amend the timely filed 2009 Petition.

First, we observe that in the absence of a final ruling on a timely filed first PCRA petition, it is proper to treat a subsequent petition for post-conviction relief as an amendment to the first timely filed petition, even if there is substantial time between the two filings. ***See Commonwealth v. Sepulveda***, 144 A.3d 1270, 1280 (Pa. 2016) (approving the liberal

amendment policy of Pa.R.Crim.P. 905(A) as long as a PCRA petition is still pending before the PCRA court at the time the request for amendment is made); *Commonwealth v. Williams*, 828 A.2d 981 (Pa. 2003) (holding that because the PCRA court never ruled on the petitioner's motion to withdraw his first PCRA petition, a subsequent PCRA petition constituted an amendment to a timely filed first petition); *Commonwealth v. Flanagan*, 854 A.2d 489, 499 (Pa. 2004) (holding that since the original PCRA petition filed in 1988 was never withdrawn or dismissed, the PCRA court properly declined to treat a subsequent petition and motion for a hearing filed eleven years later as a "serial, post-conviction petition which would be independently subject to the PCRA's one-year time limitation"); *Commonwealth v. Swartzfager*, 59 A.3d 616, 620−621 (Pa. Super. 2012) (construing *pro se* PCRA petition filed in 2011 as an amendment to petitioner's "still open and timely-filed" 2001 PCRA petition).

Second, we note that "PCRA courts are invested with great discretion to permit the amendment of a post-conviction petition." *Commonwealth v. Mojica*, 242 A.3d 949, 954 (Pa. Super. 2020) (citation omitted) (citing *Flanagan*, 854 A.2d at 499), *appeal denied*, ___ A.3d ___, 493 EAL 2020 (Pa. filed Apr. 13, 2021). Subsequent amendments do not need to raise the same issues as the initial filing. *See Flanagan*, 854 A.2d at 499−500. "Rather, the prevailing rule remains simply that amendment is to be freely

- 11 -

allowed to achieve substantial justice." ***Id.*** at 500 (citing Pa.R.Crim.P. 905(A)).

Finally, in general, if an appellant fails to seek leave of court, any claim raised in an unauthorized supplemental petition is waived. ***Commonwealth v. Reid***, 99 A.3d 427, 437 (Pa. 2014). However, the PCRA court may implicitly allow amendment of a petition without formal leave of court if it does not strike the filing, and it considers the supplemental materials prior to dismissing the petition. ***Commonwealth v. Brown***, 141 A.3d 491, 503 (Pa. Super. 2016); ***see also Commonwealth v. Boyd***, 835 A.2d 812, 816 (Pa. Super. 2003) (holding that where a PCRA court denied a petition to amend, but later accepted and considered the amended petition on the merits, the PCRA court "effectively allowed [Boyd] to amend his petition to include those issues presented in the supplement" pursuant to Rule 905(A)).

Here, the PCRA court never ruled on Appellant's motion for leave to amend or formally grant Appellant leave to amend, nor did it strike the filing. The PCRA court stated later in the case that it had reviewed Appellant's "*Pro Se* PCRA Petition [*i.e.*, the 2009 Petition], **Counsel's Amended Petition** [*i.e.*, the 2019 Second Amended Petition], [and the] Commonwealth's Motion to Dismiss" before dismissing "based on lack of merit." Order, 9/18/19 (emphasis added); ***see also*** Pa.R.Crim.P. 907 Notice, 8/20/19 ("The issues raised in the [PCRA] petition **filed by your**

**attorney** [*i.e.*, the 2019 Second Amended Petition] are without merit.") (emphasis added). Moreover, in its Rule 1925(a) opinion, the PCRA court addressed the merits of the claims raised in the 2019 Second Amended Petition. PCRA Court Opinion, 5/12/20, at 5–11. Under these circumstances, we conclude the PCRA court implicitly allowed Appellant to amend his 2009 Petition to include those issues presented in the 2019 Second Amended Petition pursuant to Rule 905(A). Because the 2019 Second Amended Petition relates back to the timely filed 2009 Petition, we have jurisdiction over the matters raised in Appellant's appeal. Accordingly, we will address the merits of this appeal.

We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. **Commonwealth v. Hanible**, 30 A.3d 426, 438 (Pa. 2011) (citation omitted). "Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." **Id.** (citation omitted). These errors include a constitutional violation or ineffectiveness of counsel, which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." **Commonwealth v. Cousar**, 154 A.3d 287, 296 (Pa. 2017); 42 Pa.C.S. § 9543(a)(2). The PCRA court's findings will not be disturbed unless there is no support for them in the certified

record.  ***Commonwealth v. Lippert***, 85 A.3d 1095, 1100 (Pa. Super. 2014).

Appellant's claims challenge the effectiveness of trial counsel.  It is well settled that counsel is presumed to be effective and "the burden of demonstrating ineffectiveness rests on [the petitioner]."  ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010).  To satisfy this burden, the petitioner must plead and prove by a preponderance of the evidence that: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different.  ***Commonwealth v. Housman***, 226 A.3d 1249, 1260 (Pa. 2020) (citing ***Strickland v. Washington***, 466 U.S. 668 (1984)). A claim of ineffectiveness will be denied if the petitioner's evidence fails to meet any one of these three prongs.  ***Commonwealth v. Martin***, 5 A.3d 177, 183 (Pa. 2010).

In his first issue, Appellant argues trial counsel was ineffective for failing to object to the trial court's jury instructions.  Appellant's Brief at 3. Specifically, Appellant asserts that a portion of the trial court's jury instruction relating to reasonable doubt was unconstitutional, and trial counsel was ineffective for failing to object to it.  ***Id.*** at 9−23.  As a result, Appellant contends he is entitled to a retrial.  ***Id.*** at 10.

We review the challenged portion of a jury instruction in light of the entire instruction. **_Commonwealth v. Cam Ly_**, 980 A.2d 61, 88 (Pa. 2009). Moreover, trial courts have broad discretion in phrasing a jury charge as long as the law is clearly, adequately, and accurately described. **_Id._** (citation omitted). "[A]n imperfect instruction does not constitute reversible error where the charge, taken as a whole, fairly and accurately conveys the essential meaning." **_Commonwealth v. Uderra_**, 862 A.2d 74, 92 (Pa. 2004).

The trial court's jury charge regarding reasonable doubt is set forth below:[6]

> Ladies and gentlemen, it is not [Appellant]'s burden to prove that he is not guilty. It is the Commonwealth that always bears the burden of proving each and every element of the crimes charged and that [Appellant] is guilty of those crimes beyond a reasonable doubt.
>
> * * *
>
> [I]f the evidence does prove beyond a reasonable doubt that [Appellant] is guilty of the crimes charged, then your verdict should be guilty.
>
> Ladies and gentlemen, the Commonwealth bears this burden of proof beyond a reasonable doubt. That is the burden they must reach to prove that [Appellant] is guilty, but this does not mean that the Commonwealth must prove its case beyond all doubt. The Commonwealth is not required to prove its case to a mathematical certainty nor must it demonstrate the complete impossibility of innocence.

---

[6] The portions of the jury charge that Appellant contends are improper are emphasized in bold-face type. **_See_** Appellant's Brief at 13−14.

- 15 -

A reasonable doubt is a doubt that would cause a careful, sensible person to pause, to hesitate, or to refrain from acting upon a matter of the highest importance to your own affairs or to your own interests.

A reasonable doubt must fairly arise out of the evidence that was presented or the lack of evidence that was presented for each element of the crimes charged.

Ladies and gentlemen, it helps to think about reasonable doubt if you think about someone that you love, someone who is truly, truly precious to you -- a spouse, a significant other, a child, a grandchild -- someone truly precious in your life. Let's say that that person's physician told them that they had a life-threatening condition and the **best option** for treating that life-threatening condition was surgery.

Now, if you're like me, you're probably going to get a second opinion; you might get a third opinion. You're probably going to call everybody you know who has anything to do with medicine to say, well, what do you know about this condition? What do you know about this proposed surgical procedure? What do you know?

You probably go on the Internet, research everything you can find; but at some point the question will be called. **Do you go forward** with the surgery for your loved one, or don't you?

**If you go forward**, it is not necessarily because you have moved beyond all doubt. All doubt would be a promise that this would work. If you **go forward**, it is because **you have moved beyond all reasonable doubt**. A reasonable doubt must fairly arise out of the evidence. It may not be one that is manufactured. It may not be a doubt that is imagined to avoid carrying out an unpleasant responsibility. You may not find [Appellant] guilty based upon a mere suspicion of guilt.

The Commonwealth does bear its burden of proving him guilty beyond a reasonable doubt. If the Commonwealth has met that burden, then [Appellant] is no longer presumed to be innocent; and you should find him guilty. On the other hand, if the Commonwealth has not met its burden, you must find him not guilty.

N.T., 11/18/05, at 113−117 (emphases added).

Appellant argues that the trial court's analogy "inserted a requirement that any doubt worthy of acquittal must be so serious and grave that it would rise to the level causing a mother to reject surgery for her dying child when surgery was the best protocol that could save the child." Appellant's Brief at 15. According to Appellant, the analogy "relieved the Commonwealth of its' [*sic*] high burden to prove guilt beyond a reasonable doubt." ***Id.*** He also claims that "the repeated reference to 'going forward' was inconsistent with its instruction that the jury should vote for acquittal if the jury would pause or hesitate before acting." ***Id.*** Appellant further contends that trial counsel lacked an objectively reasonable basis for failing to object to this portion of the charge and preserve it for appellate review. ***Id.*** at 17. He asks us to remand this case for an evidentiary hearing, where trial counsel can testify as to why he did not object to the charge, but at the same time, Appellant argues that no matter how trial counsel testifies at such a hearing, it could not be objectively reasonable.[7] ***Id.*** at 18.

---

[7] The PCRA court concluded no relief was due because no precedential Pennsylvania appellate court decision has decided the constitutionality of the portion of the jury instruction at issue. PCRA Court Opinion, 5/12/20, at 7. While this Court's decisions on the matter thus far are not precedential, claims of error nearly identical to Appellant's have been presented on appeal to this Court to no avail. ***See***, ***e.g.***, ***Commonwealth v. Nam***, 221 A.3d 301, 3641 EDA 2018 (Pa. Super. filed August 21, 2019) (non-precedential decision) (concluding that a claim that trial counsel was ineffective for failing to object to the Honorable Renee Cardwell Hughes's surgery analogy in her jury instruction on reasonable doubt lacked merit under the PCRA), *appeal denied*, 224 A.3d 1260, 446 EAL 2019 (Pa. filed February 11, 2020);

A jury instruction violates due process if there is a reasonable likelihood that the jury interpreted the instruction to allow a conviction based upon a degree of proof below the reasonable-doubt standard. ***Victor v. Nebraska***, 511 U.S. 1 (1994). When determining whether an instruction is unconstitutional, "the proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury **did** so apply it." ***Id.*** at 6 (emphasis in original) (citing ***Estelle v. McGuire***, 502 U.S. 62, 72 n.4 (1991)).

---

***Commonwealth v. Moore***, 225 A.3d 1155, 3211 EDA 2017 (Pa. Super. filed December 13, 2019) (non-precedential decision) (same); ***Commonwealth v. Santiago***, 240 A.3d 180, 3639 EDA 2018 (Pa. Super. filed August 20, 2020) (non-precedential decision) (same); ***Commonwealth v. Vando***, 242 A.3d 457, 2771 EDA 2018 (Pa. Super. filed November 30, 2020) (non-precedential decision) (same); ***Commonwealth v. Drummond***, ___ A.3d ___, 2187 EDA 2018 (Pa. Super. filed February 16, 2021) (non-precedential decision) (same); ***Commonwealth v. Warner***, 240 A.3d 943, 2171 EDA 2019, 2172 EDA 2019 (Pa. Super. filed September 18, 2020) (non-precedential decision) (same and alternatively concluding there was no prejudice); ***Commonwealth v. King***, 245 A.3d 1061, 2533 EDA 2018 (Pa. Super. filed December 11, 2020) (non-precedential decision) (same). ***See*** Pa.R.A.P. 126(b) (non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

Appellant contends that this argument was raised successfully by a petitioner in pursuit of a writ of *habeas corpus* in federal court. Appellant's Brief at 10−13, 18−19. In ***Brooks v. Gilmore***, No. 15-5659, 2017 WL 3475475 (E.D. Pa. filed August 11, 2017) (unpublished memorandum), a federal district court concluded a similar jury instruction given by the same trial judge was unconstitutional and ordered a new trial. Nevertheless, this argument has not prevailed in any precedential decision, and we are not bound by the decision in ***Brooks***. ***See Commonwealth v. Natividad***, 200 A.3d 11, 36 (Pa. 2019) (providing that although we are required to follow the decisions of the United States Supreme Court, we are not bound by the opinions of inferior federal courts).

Here, although the trial court's analogy may have focused on refraining from acting, as opposed to hesitating from acting, we cannot agree that this finite aspect of the instruction as a whole alters the reasonable-doubt standard. The Pennsylvania Supreme Court has upheld reasonable-doubt instructions that focus on restraint from acting. *See*, *e.g.*, *Commonwealth v. Sattazahn*, 952 A.2d 640 (Pa. 2008). In *Sattazahn*, the defendant argued that the trial court altered the reasonable-doubt standard when it used the word "refrains" as opposed to "hesitate." *Id.* at 668. Our Supreme Court disagreed and concluded that the trial court's word choice did not amount to reversible error due to the wide latitude given to judges in crafting instructions and the fact that federal and state courts have upheld charges using identical or substantially similar language. *Id.* at 668 and n.20.

Although Appellant takes issue with one aspect of the charge, we reiterate that jury instructions must be viewed in their entirety. *Cam Ly*, 980 A.2d at 88. Here, the trial court correctly defined reasonable doubt as follows: "A reasonable doubt is a doubt that would cause a careful, sensible person to pause, to hesitate, or to refrain from acting upon a matter of the highest importance to your own affairs or to your own interests." N.T., 11/18/05, at 115. We conclude that this language is substantially similar to Pennsylvania's Suggested Standard Jury Instruction for reasonable doubt in criminal matters which provides, in pertinent part, "A reasonable doubt is a

doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in his or her own affairs." Pa. Suggested Standard Criminal Jury Instruction, 7.01 Presumption of Innocence—Burden of Proof—Reasonable Doubt, Pa. SSJI (Criminal), § 7.01; *see also Commonwealth v. Jones*, 912 A.2d 268, 287 (Pa. 2006) (*plurality*) (cited with approval in *Commonwealth v. Cook*, 952 A.2d 594, 630 (Pa. 2008)).

The trial court's charge defined reasonable doubt and informed the jury that it could find Appellant guilty only if it found that the Commonwealth proved the elements of the crimes beyond a reasonable doubt. N.T., 11/18/05, at 113−117. When we review the trial court's surgery analogy in conjunction with the trial court's proper definition of reasonable doubt and the instruction as a whole, we discern no basis to conclude that there is a reasonable likelihood that the jury applied the instruction concerning reasonable doubt in an unconstitutional manner. *See Victor*, 511 U.S. at 6.

Accordingly, we find no error in the PCRA court's conclusion that Appellant's claim of trial counsel's ineffectiveness for failing to object to the jury instruction lacked merit. PCRA Court Opinion, 5/12/20, at 5−8; *see also Commonwealth v. Cox*, 863 A.2d 536, 549 (Pa. 2004) (trial counsel cannot be deemed ineffective for failing to object to a proper jury instruction).

Because we agree with the PCRA court that Appellant's claim lacks arguable merit, we need not reach the remaining two prongs of the test for ineffective assistance of counsel. *Martin*, 5 A.3d at 183. However, if we were to address the prejudice prong, we would agree with the PCRA court that even if counsel had objected to the jury instruction, it would not have altered the result of the trial. PCRA Court Opinion, 5/12/20, at 7–8. Appellant's convictions were due to the overwhelming evidence against him, not trial counsel's failure to object to the trial court's reasonable-doubt instruction. *Id.* at 7. The PCRA court summarized the evidence against Appellant and concluded as follows:

> Three eyewitnesses, [G.B.], [Bradshaw], and Rasan [Davis], actually saw [Appellant] shoot the victim and they knew [Appellant] from the neighborhood so there was no real chance of misidentification. All three testified at trial regarding what they saw. … On the witness stand, Saunders' [*sic*] claimed that he could not recall anything about the case. The Commonwealth then read from Saunders' sworn statement to police. In this statement, Saunders told police that he heard gunshots on the day of the murder, ran outside, and saw [Appellant] running away. He told police that he later spoke to [Appellant], who confessed to killing [Chavis], getting rid of the gun, and feeling confident that he would "beat the case." Further implicating [Appellant] at trial was the fact that police recovered two empty gun holsters from his bedroom when they executed a search warrant at his house. In addition, the evidence showed that [Appellant] called both Barbara and Zakia [Williams], and threatened Zakia to stop talking to police. There was also [Appellant's] full detailed confession to his cellmate Raheem Blakely (although Blakely later recanted when he was unable to procure a deal with the prosecutors in his own case). … [T]he evidence of guilt was overwhelming and [Appellant] is unable to prove prejudice.

PCRA Court Opinion, 5/12/20, at 8.

- 21 -

We are cognizant that Appellant contends the jury instruction "resulted in a structural error which can never be considered harmless." Appellant's Brief at 20–23. However, Appellant does not address the distinction between the presumption of prejudice on direct appeal and the prejudice that must be proven in the context of ineffective assistance of counsel under the PCRA.

In **Weaver v. Massachusetts**, ___ U.S. ___, 137 S.Ct. 1899 (2017), the United States Supreme Court discussed this distinction:

> The question then becomes what showing is necessary when the defendant does not preserve a structural error on direct review but raises it later in the context of an ineffective-assistance-of-counsel claim. To obtain relief on the basis of ineffective assistance of counsel, the defendant as a general rule bears the burden to meet two standards. First, the defendant must show deficient performance—that the attorney's error was "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." **Strickland**[, 466 U.S. at 687]. Second, the defendant must show that the attorney's error "prejudiced the defense."

**Weaver**, 137 S.Ct. at 1910.

> When a structural error is preserved and raised on direct review, the balance is in the defendant's favor, and a new trial generally will be granted as a matter of right. When a structural error is raised in the context of an ineffective-assistance claim, however, finality concerns are far more pronounced. For this reason, and in light of the other circumstances present in this case, **petitioner must show prejudice** in order to obtain a new trial.

**Id.** at 1913 (emphasis added).

Additionally:

> The U.S. Supreme Court has emphasized that there are only "three categories of cases, described in **Strickland**, in which we

> presume prejudice rather than require a defendant to demonstrate it." [**Smith v.**] **Robbins**, 528 U.S. [259,] 287… [(2000)]. Those categories involve claims demonstrating (1) an actual denial of counsel, (2) state interference with counsel's assistance, or (3) an actual conflict of interest burdening counsel. **Id.**

**Commonwealth v. Lambert**, 797 A.2d 232, 245 (Pa. 2001).

Because Appellant's claim of error concerning counsel's failure to object to the jury instruction does not fall into the categories enumerated in **Robbins**, prejudice is not presumed. **Lambert**, 797 A.2d at 245. Rather, Appellant is required to establish prejudice. **Weaver**, 137 S.Ct. at 1910. Accordingly, we reiterate that if we were to reach the prejudice prong of the test for ineffective assistance of counsel, we would determine the PCRA court's conclusions are supported by the record and free of legal error because Appellant has not established prejudice; *i.e.*, there is not a reasonable probability that the outcome would have been different if counsel had objected. PCRA Court Opinion, 5/12/20, at 8; **see also Housman**, 226 A.3d at 1260.

Turning to his second issue, Appellant claims trial counsel was ineffective for failing to object properly to portions of the prosecutor's closing argument, which referenced "snitching." Appellant's Brief at 23−31. The portion of the prosecutor's closing argument that Appellant finds objectionable is as follows:[8]

---

[8] The portions of the jury charge that Appellant contend are improper are emphasized in bold-face type. **See** Appellant's Brief at 25−26.

- 23 -

Starting first with [Bradshaw], when you heard her testify, did you see how she walked in there? She's 16 years old. That's the same witness who could not go at the preliminary hearing and even sit on the stand and say what happened. **Why? You know it's because she can't snitch. I don't have to tell you that.** Defense counsel can't claim that's not what occurred. **We all know. It didn't just start now. It's gotten worse, and it doesn't require threats for you to be scared to talk.**

N.T., 11/18/05, at 91−92 (emphases added).

By way of background, trial counsel objected to the foregoing by arguing the prosecutor's comments were "designed for no other reason than to unfairly paint in a light that is improper what [trial counsel] did in closing argument and as counsel for [Appellant], which was certainly quite proper and certainly within the bounds of propriety, both professional and legal propriety." N.T., 11/18/05, at 106−107. The trial court noted the objection, and while not requested by trial counsel, the court stated no curative action was required. *Id.* at 107.

On direct appeal, Appellant raised the issue of prosecutorial misconduct by arguing the prosecutor improperly commented on the testimony of Bradshaw during closing argument. *Gamble*, 281 EDA 2006 (unpublished memorandum at *19, 22). This Court found the issue waived for failure "to provide any analysis to support [the] contention." *Id.* (unpublished memorandum at *22).

On collateral appeal, Appellant now argues trial counsel, instead, should have objected on the basis that the prosecutor's comments "were not

- 24 -

based on evidence of record and were an expression of the prosecutor's personal opinion." Appellant's Brief at 26.[9]

A prosecutor is allowed wide latitude in advocating for the Commonwealth, including the right to argue all fair deductions from the evidence, to respond to defense arguments, and to engage in a certain degree of oratorical flair. ***Commonwealth v. Judy***, 978 A.2d 1015, 1020 (Pa. 2009). In addition, we are mindful of the following:

> A claim of ineffective assistance grounded in trial counsel's failure to object to a prosecutor's conduct may succeed when the petitioner demonstrates that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process. To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. The touchstone is fairness of the trial, not the culpability of the prosecutor.
>
> We further reiterate that a prosecutor has reasonable latitude during his closing argument to advocate his case, respond to arguments of opposing counsel, and fairly present the Commonwealth's version of the evidence to the jury. The court must evaluate a prosecutor's challenged statement in the context in which it was made. Finally, not every intemperate or improper remark mandates the granting of a new trial; reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict.

---

[9] Appellant does not argue on appeal that appellate counsel was ineffective for failing to provide any analysis to support this issue, which resulted in its waiver on direct appeal.

*Hanible*, 30 A.3d at 464–465 (quotation marks, brackets, and citations omitted).

In dismissing this claim, the PCRA court concluded that Appellant failed to prove all three prongs of the ineffective-assistance-of-counsel test. PCRA Court Opinion, 5/12/20, at 9–10. The PCRA court reasoned as follows:

> First, [Appellant] cannot show that this claim has arguable merit. The law is well settled that prosecutors have wide latitude when making closing remarks and may "make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments." *Commonwealth v. Chmiel*, … 30 A.3d 1111, 1181 ([Pa.] 2011) (citing *Commonwealth v. Cox*, … 983 A.2d 666, 687 ([Pa.] 2009)). [Appellant] was charged with, and ultimately convicted of, witness intimidation. Thus, the Commonwealth's comments regarding snitching were relevant to the charges and related to testimony of intimidation at trial. Second, [Appellant] is unable to show counsel had no reasonable basis for his action. Here, defense counsel did object to the Commonwealth's statements, but did so on an arguably more meritorious basis (counsel's conduct and tactics). Defense counsel cannot be faulted for failing to object on a frivolous basis. *Commonwealth v. Spotz*, 896 A.2d 1191, 1247 (Pa. 2006); *Commonwealth v. Fears*, 836 A.2d 52, 65 n.13 (Pa. 2003) (counsel cannot be found ineffective for failing to make a meritless objection). Last, [Appellant] is unable to show that this in any way affect[ed] the outcome of his trial. As discussed above, the evidence against him was overwhelming. Thus, no relief is due.

PCRA Court Opinion, 5/12/20, at 9−10.

We do not agree with Appellant's conclusion that this statement by the prosecutor was an invalid reflection of the evidence presented at trial. *See* Appellant's Brief at 26–27. Rather, our determination is supported by the following testimony at trial.

[Commonwealth:]   And do you remember coming to court on May 25th, 2004, which was the first hearing?

[Bradshaw:]   Yes.

* * *

[Commonwealth:]   Okay.  And on that day, did you talk to the judge?

[Bradshaw:]   No.

[Commonwealth:]   Okay.  And why not?

[Bradshaw:]   'Cause I didn't want to talk.  I didn't want to be a snitch.

[Commonwealth:]   And why is that?

[Bradshaw:]   I got to live there.  I got to live in that neighborhood, and I don't want nobody to do nothing to me.

N.T., 11/15/05, at 144−145.

The prosecutor next asked why Bradshaw believed someone was going to do something to her.  Trial counsel objected to this question, and the trial court sustained the objection.  N.T., 11/15/05, at 145.  The record reveals that this objection stemmed from a pretrial conference outside the presence of the jury.  *Id.* at 40−53.  During that conference, the Commonwealth explained that even though, at the time, Bradshaw had not yet talked to police, she had been subpoenaed to testify at the preliminary hearing.  She showed up outside the courthouse that day, but was crying and refused to testify because she was scared.  The day after the preliminary hearing, a drive-by shooting occurred at Bradshaw's residence, while she was at home

with her family on the front porch. After the drive-by shooting, Bradshaw came forward and talked to police. The Commonwealth wanted to present evidence of the drive-by shooting to explain why there was a delay in Bradshaw's statement to police. The trial court determined that without an offer of proof that Appellant was involved in the drive-by shooting, the prejudicial effect precluded it. *Id.* at 50−51. The trial court ruled, however, that the Commonwealth could present evidence of Bradshaw's refusal to cooperate at the preliminary hearing because she was scared. *Id.* at 51−52.

Thus, we conclude that the prosecutor's comments were an effort to present the Commonwealth's version of what the evidence established. *Hanible*, 30 A.3d at 465. When we view the closing statement in its entirety, it is apparent the Commonwealth was highlighting Bradshaw's testimony that she was apprehensive and reluctant to help the Commonwealth, despite witnessing the incident. The prosecutor's comments were based on the evidence presented at trial and the inferences drawn therefrom. Appellant has not shown that the comments by the prosecutor had the unavoidable effect of prejudicing the jurors and forming in their minds a fixed bias and hostility toward Appellant, such that they could not weigh the evidence and render a true verdict. *Id.* Thus, Appellant's argument lacks arguable merit. In addition, for the reasons discussed above, Appellant cannot satisfy the prejudice prong of the test for

ineffective assistance of counsel. For all of the foregoing reasons, no relief is due on this issue.

Finally, Appellant argues that trial counsel was ineffective for failing to make a timely and proper hearsay objection during Saunders's testimony, which resulted in waiver of the issue on direct appeal. Appellant's Brief at 31−37; *see also Gamble*, 281 EDA 2006 (unpublished memorandum at *14−16) (finding issue waived due to lack of objection). By way of background, on direct examination the Commonwealth questioned Saunders about his prior statement to police. Appellant takes issue with the following exchange, which occurred when the Commonwealth began to read from Saunders's statement:

| [Commonwealth:] | QUESTION: Do you know who witnessed [Appellant] killing [Chavis]? |
|---|---|
| [Saunders:] | No. |
| [Commonwealth:] | Do you remember your answer? "I heard three little girls, Little G,[10] and the guys he was with." Do you remember that question and answer? |
| [Saunders:] | No. |
| [Commonwealth:] | Did he tell you how he knew Little G saw it? |
| [Saunders:] | No. |

N.T., 11/16/05, at 115−116.

_____

[10] "Little G" refers to G.B., who identified Appellant as the shooter at trial. N.T., 11/15/05, at 177−178; N.T., 11/16/05, at 103.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). Generally, hearsay is inadmissible, "as it lacks guarantees of trustworthiness fundamental to our system of jurisprudence." *Commonwealth v. Manivannan*, 186 A.3d 472, 480 (Pa. Super. 2018) (citations, internal quotation marks, and brackets omitted). To establish trustworthiness, "the proponent of a hearsay statement must establish an exception to the rule of exclusion before it shall be admitted." unless it falls within an exception to the hearsay rule. *Id.* Statements of an opposing party are a recognized exception to the hearsay rule. Pa.R.E. 803(25).

In dismissing this claim, the PCRA court explained that when read in context, the word "he" in the statement, "I heard three little girls, Little G, and the guys he was with," referred to Appellant. PCRA Court Opinion, 5/12/20, at 10−11. In further support, the court noted that "he" in the next question clearly referred to Appellant, that question asked, "Did he tell you how he knew Little G saw it?" *Id.* at 11. The PCRA court concluded the statement was admissible under the hearsay exception as statements of a party opponent. *Id.* (citing Pa.R.E. 803(25)). Further, the court determined that even if the statement were inadmissible hearsay, Appellant nonetheless failed to prove prejudice. PCRA Court Opinion, 5/12/20, at 11. We conclude that even if counsel had objected to this statement, it would not have

- 30 -

altered the result of the trial and thus, we find the PCRA court's conclusions are supported by the record and free of legal error. As discussed above, Appellant's convictions were due to the overwhelming evidence against him, including evidence corroborating the statement that G.B. witnessed the incident, not due to trial counsel's failure to object to Saunders's testimony. Accordingly, this issue is without merit because Appellant has failed to establish prejudice.

For the reasons set forth above, we discern no error in the PCRA court's order dismissing Appellant's PCRA petition. Accordingly, we affirm.

Order affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 6/08/2021